755 So.2d 1256 (2000)
Kelvin SANDERS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-00943-COA.
Court of Appeals of Mississippi.
February 8, 2000.
Nick Crawford, Greenville, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Kelvin Sanders was convicted by a Washington County Circuit Court jury of armed robbery, two counts of aggravated assault, and shooting into a building based on an incident alleged to have occurred in a fast food restaurant in the city of Greenville. Sanders has appealed his conviction, raising several issues. He includes a claim that he was denied a fair trial because of *1257 the improper introduction of evidence of his prior conviction for conspiracy to commit armed robbery after the trial court had originally ruled the evidence inadmissible. This Court agrees that the evidence was improperly admitted over Sanders's timely objection. We further find that the trial court's conflicting rulings on the admissibility of the evidence had such a fundamental impact on the course of the trial and the presentation of Sanders's defense that the conviction must be overturned and the case remanded for further appropriate proceedings.
¶ 2. Because our decision turns on this evidentiary question, it is not necessary to engage in a lengthy analysis of the underlying facts said to demonstrate Sanders's guilt. Suffice it to say that Sanders was charged with committing an armed robbery at pistol point in the restroom of a fast food establishment and then with discharging that firearm into the building from the parking lot as he attempted to flee the scene of the crime, the bullet striking the robbery victim's girlfriend in the hand.
¶ 3. Prior to the first witness being called, the defense raised the question of the admissibility of evidence that Sanders had a prior conviction for conspiracy to commit armed robbery. The question arose in the context of whether or not Sanders would elect to testify in his own defense; a decision that would, to some extent, be determined by whether this prior conviction would be admissible to impeach his credibility. The trial court, without engaging in any detailed analysis of the evidentiary questions raised, determined that the conviction would not be admissible to attack Sanders's credibility under Mississippi Rule of Evidence 609(a)(1).
¶ 4. After the prosecution rested, Sanders appeared as the sole witness in his own defense. He related a version of the events at the restaurant that admitted his presence but denied the truth of essentially all of the remaining evidence presented by the State. During cross-examination, Sanders was asked whether he had ever related this version of events to any other person. This was an apparent attempt to color his testimony as a recently-manufactured fabrication. Sanders insisted that he had previously spoken to one person and given the same version of events. When questioned further, Sanders identified that person as Lee McTeer, his probation officer.
¶ 5. At that point, the prosecuting attorney began a rigorous inquiry into the circumstances of Sanders having a probation officer and ultimately inquired directly of Sanders as to what previous crime had resulted in his status as a probationer. Defense counsel made a timely objection, which the trial court overruled by indicating that Sanders had "opened the door" to that inquiry by his earlier responses. Thus, Sanders was compelled to reveal to the jury that he had, indeed, been previously convicted of the crime of conspiracy to commit armed robbery.
¶ 6. It is this forced admission which Sanders now says was both improper and extremely prejudicial to his chance to obtain a fundamentally fair trial. He suggests that the similarity between his earlier conviction and the charges for which he was being tried raised the specter that the jury would convict partly on their perception that Sanders was a person predisposed to such criminal activity.
¶ 7. There is substantial merit in that argument. While it is true that, in some circumstances, a defendant, by making certain representations to the jury in his testimony, may be said to have opened the door to otherwise inadmissible evidence, the fact remains that this newly admissible evidence must, itself, meet the test of relevancy as to some contested issue essential *1258 to the proper resolution of the case. Thus, where a defendant asserts, without any provocation from the State, that he has never committed a crime of any nature, he may find that he has "opened the door" to evidence of otherwise-inadmissible criminal convictions. Quinn v. State, 479 So.2d 706, 708 (Miss.1985); Collins v. State, 734 So.2d 247, 249 (Miss.Ct.App.1999). The new-found relevance of this evidence is that it serves to impeach the witness's credibility by demonstrating his untruthfulness on one point while on the stand, which can then impeach his credibility as to other matters under the doctrine of falsus in uno, falsus in omnibusa different proposition from the theory supporting Rule 609, which is that the previous criminal activity itself suggests the untrustworthiness of the sworn word of the witness. McInnis v. State, 527 So.2d 84, 88 (Miss. 1988).
¶ 8. However, in this case, the sole legitimate inquiry by the State was whether, in fact, Sanders had ever related a similar version of events to any other person. It was mere happenstance that the person to whom Sanders claimed to have told a similar story was his probation officer, and that fact neither added nor subtracted from the likelihood that Sanders's version of events told from the stand was merely a recent fabrication concocted to put an innocent spin on the prosecution's evidence. Even conceding that Sanders may have volunteered the damaging information that he was on probation for a prior crime, the nature of his previous criminal activity does nothing to further the inquiry into whether or not Sanders told his probation officer a story that coincided with his version from the witness stand. See M.R.E. 401. For that reason, the trial court should have sustained defense counsel's timely objection to this inquiry into information that was entirely irrelevant to any "fact that [was] of consequence to the determination of the action...." M.R.E. 401.
¶ 9. The Mississippi Supreme Court has cautioned that, in taking advantage of a defendant's invitation to introduce otherwise-inadmissible evidence through a door opened by the defendant, the State may not exceed the scope of the invitation. Stewart v. State, 596 So.2d 851, 853-54 (Miss.1992). By claiming to have related his version of events to an individual who happened to be his probation officer, Sanders may have opened the door to the fact of his probation. However, the State was permitted by the trial court to substantially exceed the scope of that invitation when it was permitted to extract from Sanders the nature of the criminal conviction giving rise to his probation.
¶ 10. The prejudicial impact of this information of Sanders's prior conviction for a crime relating to armed robbery cannot be denied. In formulating trial strategy, defense counsel understood the potential damage such information could inflict and prudently obtained a determination of its inadmissibility before the decision was made as to whether the defendant would testify. Though a defendant is not absolutely entitled to a preliminary ruling on such matters, the Mississippi Supreme Court has sanctioned the practice, going so far as to "strongly encourage that such [advance] rulings be made...." Settles v. State, 584 So.2d 1260, 1265 (Miss.1991). In this case, it is entirely conceivable that Sanders's entire trial strategy would have been different had defense counsel known that, by calling Sanders to the stand, counsel exposed Sanders to the likelihood that the jury would be permitted to learn of his prior conviction.
¶ 11. The State, as an alternative argument, suggests that the trial court's real error was not in admitting the evidence once it was sought by the State in cross-examination but that the error was in the original ruling against the admissibility of this prior conviction under Rule *1259 609. We find that argument to be without merit. A defendant, in making the crucial decision as to whether or not to testify, is entitled to rely on the trial court's ruling regarding the admissibility of prior convictions for purposes of attacking his credibility under Rule 609. The effect of the State's argument would be that the trial court could, after the defendant began his testimony, rethink its position and change its ruling on the admissibility of a prior conviction, thereby forcing the defendant to reveal such information to the jury when, had the defendant known that would be the outcome, he would not have elected to testify at all. Such decisions as to whether or not the defendant will testify can fundamentally alter the strategy of the defense at trial, and we are not satisfied that a trial court may "correct" an erroneous ruling after the defendant has substantially and irrevocably changed the course of his defense in reliance upon a previous ruling without substantially undermining the integrity of the trial process.
¶ 12. Because we are satisfied that Sanders was free to testify in his own defense without concern that his previous conviction would be made known to the jury based on the earlier ruling of the trial court, and because Sanders was disappointed in that prospect by the subsequent erroneous evidentiary ruling of the trial court, Sanders has been denied a fundamentally fair trial. The proper remedy for this error is to reverse the conviction and remand to the trial court for such further proceedings as are appropriate.
¶ 13. Our decision to reverse on this ground renders moot all remaining issues raised in the appeal.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.